# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:23-CR-152(1) |
| vs. | : | |
| FAISAL M. DAROD, | : | CHIEF JUDGE SARAH D. MORRISON |
| Defendant. | : | |

## SENTENCING MEMORANDUM FOR FAISAL M. DAROD

Now comes Defendant, Faisal M. Darod, through counsel, and hereby submits the following Sentencing Memorandum in support of a sentence of 240 months, which is sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

**I.      Procedural History**

Faisal M. Darod is before this Court for sentencing following his guilty pleas on October 11, 2023 to Counts 1, 2 and 7, Aiding and Abetting Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2(a); Counts 3, 5, 8, and 10, Aiding and Abetting the Use and Carrying of a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2(a); and Counts 4 and 9, Aiding and Abetting Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and 2(a).

**II.      Determining Mr. Darod's Sentence**

The Statutory provisions for the charges in Counts 1, 2, 4, 7, and 9 of the Indictment include a maximum term of 20 years imprisonment and a maximum fine of $250,000.00. There is no mandatory minimum term of imprisonment. The Statutory provisions for the charges in Counts 3, 5, 8, and 10 include a minimum mandatory sentence of 5 years up to life imprisonment, which must be run consecutively to one another and to any other counts, and a maximum fine of $250,000.00.

The Sentencing Guidelines are no longer mandatory, but instead are advisory. *United States v. Booker,* 543 U.S. 220 (2005). After the Supreme Court's decision in *Booker*, "district courts have enhanced discretion in the sentencing of criminal defendants." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). "[D]istrict courts are required to consider the applicable Guidelines sentencing range when arriving at a defendant's sentence, 18 U.S.C. § 3553(a)(4), but only as one factor of several laid out in § 3553(a)." *Id*. (citing Booker 125 S. Ct. at 764).

The Sixth Circuit explains that a district court must: (1) acknowledge the defendant's applicable Guidelines range; (2) discuss the reasonableness of any variation from that range; and (3) consider the other factors identified in 18 U.S.C. § 3553 (a). *Id*.

**A. Guidelines Range**

The Presentence Investigation Report indicates a Total Offense Level of 35 for Counts 1, 2, 4, 7, and 9. With a Criminal History Category I, the guidelines range is 168-210 months of imprisonment. Counts 3, 5, 8, and 10 carry a range of 60 months imprisonment each, to be run consecutively to one another and to any sentence on the remaining counts.

In calculating the Total Offense Level, the probation officer applied a two-level reduction pursuant to U.S.S.G. § 3B1.2(b), determining that Mr. Darod was a "minor participant." The Defendant would suggest that Mr. Darod was a "minimal participant" deserving of a four-level adjustment pursuant to § 3B1.2(a).

Application Note 3(C) to §3B1.2 provides a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the amount of the adjustment:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

In this case, Abdisamad Ismail, one of Mr. Darod's accomplices, planned the robberies. Ismail decided what establishments to target, and how and when the robberies would occur. Mr. Darod had little, if any, decision-making authority over the robberies. Mr. Darod did not enter into any of the establishments. He did not confront the victims of the robberies. He did not point a firearm at them, or threaten them. He did not stand to benefit to a significant degree from the criminal activity, as he received only a small portion of the money from the robberies. For these reasons, Mr. Darod was a "minimal participant" entitled to a four-level adjustment. If applied, the Total Offense Level for Counts 1, 2, 4, 7, and 9 would be 33, reducing the Guidelines range to 135-168 months.

The probation officer included a two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(4)(B) on Count 7 for Physical Restraint of a Victim. U.S.S.G. § 2B3.1, Application Note # 6 indicates that "[t]he guideline provides an enhancement for robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by *being tied, bound, or locked up* (emphasis added.) U.S.S.G. § 1B1.1, Application Note #1(L) defines "Physically restrained" as "the forcible restraint of the victim such as by being tied, bound, or locked up."

In determining whether to apply this enhancement, circuit courts have identified a list of five, non-exhaustive factors that courts should balance, with no single factor necessarily dispositive:

1. Use of physical force;
2. Exerting control over the victim;
3. Providing the victim with no alternative but compliance;
4. Focusing on the victim for some period of time; and
5. Placement in a confined space.

*United States v. Bell*, 947 F.3d 49, 56 (3d Cir. 2020)

In this case, Ismail, while inside Byers Imports, pointed a firearm at a sales associate and directed him to retrieve keys to a Porsche from a separate locked room. There is no indication that Ismail placed his hands on the sales associate, or applied physical force. Ismail's focus on the employee was only long enough to complete the robbery. The victim was not placed in a confined space. Defendant agrees with the Government that Ismail's actions fall short of "physical restraint" for purposes of this enhancement. The Court's ruling on this objection will not change the guidelines calculation.

### B. Variance from the Guideline Range

The probation officer indicated that a departure pursuant to U.S.S.G. § 5K2.3 may be appropriate if the Court determines that:

> the victim suffered psychological injury much more serious than that normally resulting from commission of the offense; and
>
> there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. U.S.S.G. §5K2.3.

If the court finds that the factors in the second paragraph are met, the court must then also satisfy itself that the basic standard set out in the first sentence of the first paragraph is met: that the injury is "much more serious than that normally resulting from commission of the offense." In short, § 5K2.3 requires a finding of comparatively greater harm, relative to a "normal" or "typical" injury of the type enumerated in the guideline. *U.S. v. Lasaga*, 328 F.3d 61, 66 (2d Cir. 2003).  To determine if the psychological injury in this case is *much more serious* than would normally result, there must be some evidence presented of the psychological harm that is normal upon which the Court can rely and compare.  The Presentence Investigation Report describes Officer A's depression, anxiety, and post-traumatic stress disorder (PSR ¶ 204); his difficulty in maintaining a consistent mental health counseling plan (PSR ¶ 205); and his crippling depression and suicidal ideation (PSR ¶206). These psychological injuries are severe, and Mr. Darod is not minimizing their impact on Officer A. There has been no evidence presented, however, in the Presentence Investigation Report or elsewhere concerning psychological injury that would normally result from commission of this offense.

Without evidence that these injuries are not just *more* serious, but *much more* serious than would normally result, the Court should decline to depart under U.S.S.G. § 5K2.3

Officer A suffers from both physical and psychological injuries. The Government's Sentencing Memorandum describes Officer A as suffering from the pain of the shooting; the relentless cycle of surgeries, infections, and hospitalizations that have followed; and the seeming loss of his identity as a police officer and concern over his future and that of his family's. It is difficult to consider the physical injuries and the psychological injuries separately, as the officer's physical injuries and prolonged treatment likely add to the psychological trauma. However, the physical injury suffered by Officer A has been accounted for in the Sentencing Guideline calculation.

The Presentence Investigation Report indicates that Officer A was shot several times and rushed to a nearby hospital in critical condition. The officer almost bled to death while being transported to the hospital. He has lost the ability to walk on his own and suffered substantial physical impairment. (PSR ¶140)  Therefore, a six level increase was applied pursuant to U.S.S.G. § 2B3.1(b)(3)(C), as the injury involved a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent.(PSR ¶139).

Combining the six-level increase for the Specific Offense Characteristic of Permanent or Life-threatening Bodily Injury with a four -level upward Departure requested by the Government for Psychological Injury in this case where the injuries are so intertwined would result in double counting, punishing Mr. Darod twice for the same conduct.

**C. § 3553(a) Factors**

In reviewing a sentence for reasonableness, the Sixth Circuit looks to whether the district court considered the relevant § 3553(a) factors. *See United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006). The Sixth Circuit explains, "a district court's mandate is to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)." *Id.* At n.1 (quoting 18 U.S.C. § 3553(a)).

Section 3553 (a) states:

> (a) Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) [the Sentencing Guidelines];

(5) [the policy statements issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Nature and Circumstances of the Offense

From June 16 to July 6, 2023, a period encompassing 21 days of his 24 year life, Faisal Darod joined Abdisamad Ismail in this series of armed robberies in Central Ohio:

| Date | Location | Count |
|---|---|---|
| June 21, 2023 | GameStop | (Count One) |
| July 3, 2023 | Westerville Auto Group | (Count Two) |
| July 5, 2023 | 5/3rd Bank Upper Arlington | (Count Four) |
| July 6, 2023 | Byers Imports | (Count Seven) |
| July 6, 2023 | 5/3rd Bank Hilliard | (Count Nine) |

In each case, Ismail selected the target locations and planned the logistics of the robberies. Faisal's role was that of a look-out or a driver. In each case, Ismail would enter the premises while brandishing a firearm. He would then order the employees to give him money or merchandise, and then flee the scene. For his assistance, Faisal would receive a small portion of the proceeds.

On July 6, 2023, as Ismail, Faisal, and Aden Jama, a third codefendant, were leaving the scene of their most recent robbery, law enforcement officers converged on their vehicle. Ismail, the driver, sideswiped a car, and fled eventually ending up on Interstate 70 near the Mound Street exit, where they exited the car. Faisal and Jama ran.

Officer A began pursuing them. Unknown to Faisal, Jama and Officer A, Ismail had ducked behind their vehicle with his firearm drawn. As Officer A gave chase to Faisal and Jama, Ismail started shooting at him, striking him five times, and causing him serious physical harm. Other officers returned fire, resulting in the death of Ismail. Faisal was arrested the following day.

<u>The History and Characteristics of the Offender</u>

The Presentence Investigation Report accurately recites Faisal's Personal and Family Data; Physical Condition; Mental and Emotional Health; Educational, Vocational and Special Skills; Employment Record; and Financial Condition. (PSR ¶¶165-172, 175-160).

Faisal met Abdisamad Ismail and Aden Jama while in Somalia in 2020. They discovered that they were all from Columbus, Ohio. Their friendship formed, and continued upon their return to Columbus. In 2023, Ismail obtained a 9mm firearm. He started talking about committing robberies. It was about this same time that Faisal became addicted to Percocet. Although he had smoked marijuana since the age of 18, and frequently abused alcohol from the ages of 18-20, Percocet affected him differently. He spent a good deal of time in a fog, unable to focus. He lost interest in any kind of employment. He talked about returning to college, but never followed through. His only ambition was to obtain Percocet daily.

Ismail invited Faisal to assist him in committing robberies. Faisal was no longer working, and needed money for his drugs, so he agreed. Although he was supposed to act as a look-out or driver, he was unreliable. He was high on Percocet most of the time. He just sat in the car, mostly passed out. (This explains why Ismail was driving the vehicle

after the final robbery, not Faisal.) For his contribution, Ismail gave him a small portion of the proceeds, and provided him with Percocet.

<u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and</u>
<u>The need for the sentence to afford adequate deterrence to criminal conduct.</u>

These are very serious offenses for which Faisal deserves a very serious sentence. Although he did not enter the targeted locations and confront the victims with a firearm, he knowingly aided and abetted Ismail in committing multiple dangerous and violent crimes. At least a dozen victims were traumatized by their actions. Many suffer from anxiety, depression and post-traumatic stress disorder. Several victims have been unable to continue working at their jobs. Their lives have been changed forever by the actions of Ismail and Faisal.

The harm caused to Officer A is incalculable. Only 16 months into his job as a police officer, he was ambushed by Abdisamad Ismail. The physical, psychological and emotional suffering is well documented in the Presentence Investigation Report (PSR ¶¶ 59-73). Officer A correctly points out that if Faisal had not fled and ignored the officer's order to stop, he would not have been in a position for Ismail to shoot him.

A lengthy prison sentence is necessary to reflect the seriousness of the offense, to provide just punishment, and to deter others from committing similar offenses.

<u>The need for the sentence to protect the public from further crimes of the defendant; and</u>
<u>The need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

Faisal is 25 years old. If he is sentenced to a term of imprisonment of 240 months, he will serve almost as much time in prison as he has been alive. The rest of his twenties, all of his thirties, and half of his forties will be spent incarcerated. The public will be protected from Faisal for a long time. How Faisal chooses to spend his time will be up to him. He has expressed an intention to utilize his period of incarceration to obtain further education and employment skills (PSR ¶83).

### III.     Conclusion.

Mr. Darod assisted Abdisamad Ismail in committed a series of violent robberies in June and July, 2023. Although Mr. Darod did not personally enter the establishments, he was aware that Ismail was planning on committing the robberies with the use of a firearm. He acted as a look-out for Ismail, and accepted proceeds from the robberies.

The harm that was caused by their actions is immeasurable. Many people were affected, most notably Officer A. When considering the life-altering injuries suffered by the victims, it seems that no prison sentence would be long enough. The fact that Faisal was not the direct cause of these injuries does not absolve him of responsibility, but it does serve as an argument against imposing the longest sentence possible.

The Government has agreed that an appropriate disposition in this case is a term of imprisonment of between 240 months (20 years) and 360 months (30 years), to be followed by a three-year term of supervised release. Mr. Darod respectfully requests that this Court consider his age, his lack of significant prior criminal record, and his relative role in these offenses, and sentence him to a 240 months of imprisonment, as it will be sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Robert F. Krapenc
ROBERT F. KRAPENC
Ohio Supreme Court No. 0040645
150 East Mound Street, Suite 310
Columbus, Ohio 43215
P: (614) 221-5252
F: (614) 224-7101
Bob@Krapenclaw.com
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was duly served upon the Assistant United States Attorney, Office of the United States Attorney, by CM/ECF System on this 12th day of January, 2025.

/s/ Robert F.Krapenc
ROBERT F. KRAPENC  (0040645)
Attorney for Defendant